In number 2010-14-15, SYNOPSYS, Inc. against RICOH, Company Limited. Mr. Hoffman, when you're ready.  May it please the court, I'm Gary Hoffman on behalf of the appellant. There's two issues in this, in this appeal. First one deals with the term storing. The second one is whether or not the court, district court, properly applied the rules on summary judgment to the facts in issue here. In connection with the term storing, what the district court did was focus solely on the third use of the term in claim 13. It forgot about the preamble, did not pay attention to the preamble of the claim. And also, we submit, didn't pay attention to other portions where the term storing was used in other places in the claim. In the preamble of the claim, it was interpreted during the first claim construction by Judge Jenkins, that the preamble related to a process that uses a computer to direct and control the design of the ASIC chips. It was agreed in during the time of the first claim construction that what was involved here was a process for designing ASICs, where that process could be carried out on a computer, which did not require the expertise of a special VLSI designer. Can I ask you a question before you go any farther, just to make sure I have the glossary of this patent down? Yes. At various points, the patent and the parties have referred to a VLSI expert and an ASIC expert. Are we talking here, in terms of the patent, as the VLSI expert being the expert who conceives of the rules, and I won't get into storing them, but does whatever needs to be done to the rules per the patent, and the ASIC expert being the customer, in effect, who is seeking to use the software to design the chip? Is that a fair statement of the divisional labor and the terminology as it's used consistently through the patent? Yes, it is, Your Honor. Okay, go ahead. And what the claims are all directed to, and you'll see in many of the claims, it refers to the actual user. And during the claim construction here, it was agreed, and the claim was interpreted, starting from the preamble, that this was directed to the user, the person who designs the ASIC chips, who uses the tool, not the creation of the tool, by the VLSI designer. I'm sorry, expert. And that this was the whole purpose of it. The district court, when it construed the term storing, started out by looking initially at a plain meaning and said, storing is placing in a location for later use. We have no disagreement with that. Where the problem is, though, the district court went on and said, storing in a knowledge base is different from storing the knowledge base in the computer. And that's, in essence, what happened. And it said, I'm reading out, putting in the knowledge base into the computer. And there is no difference here when you apply it to the facts at hand. Let me go one step further, then come back to that if I can. The district court then proceeded to say, only synopsis, only the VLSI design expert creates the rules that are then placed into the knowledge base. So the district court was viewing this, you have to have the expertise to create the rules, as your honor indicated, author the rules, to write them. And then those are placed into a knowledge base. What happened, though, is the district court we submit was fixated on a concept that this knowledge base was like a container. In fact, during the argument down below on summary judgment, the court asked me at one point, isn't this like a pitcher of water? You put water into the pitcher, and then you move the pitcher to another location. That's not what happens in the formation of the knowledge base at any stage here. And this is both pointed out by Dr. Soderman, our expert in his declarations, and even at one point admitted by our police counsel during the district court hearing on summary judgment, that there is no pre-formed container for the knowledge base. What happens, and that's their statement or argument at 3179, what happens here is you load the rules, you put them into a memory. And as you put one rule in, it begins to form a knowledge base. As you put a second rule in, it adds to that knowledge base. It's like a stack of cards. If I put a stack of cards up here and put down two cards, I have a stack. If I put a third card on top of it, I have a bigger stack. Knowledge base is formed by the same type of matter. If I move this stack from here to here, in loading it onto a computer, what Dr. Soderman pointed out was you need to load this segment by segment. Keep in mind, this claim is directed to the user, the ace person who designs the ASICs, not the expert. And the user has to get this knowledge base, these rules, into the computer that they're using. If it's just sitting on a disk over here and I got my computer here, I'm never going to design any ASIC. It's impossible. Is it the case, in your view, as you've explained the relationship between knowledge base and rules, is it your view that the knowledge base comprises only the rules and nothing more than the rules? Yes, the knowledge base... Does the knowledge base comprise the rules and other components, potentially or actually? The knowledge base comprises the rules. And nothing else. And nothing else, yes. And you form that knowledge base just by setting up a stack of rules. And in order to load it into the computer, I have to load it segment by segment. That's the way you load software. That's the way you load data into a computer, is segment by segment. How do we know where in the specification does it tell us that the knowledge base is solely composed of the rules? That the knowledge base is... I'm sorry. Solely composed of the rules. I think it's at several locations, Your Honor. See if I can find the first one. In column nine, it says the information is stored in the knowledge base as rules. Also, then that's in knowledge base 35. When you go to figure three and look at what's inside the computer, and 10 is the program inside the computer, it talks about a knowledge base. Throughout the specification, what it says is in that knowledge base is the rules. Well, that's not quite the same thing. It's saying that the knowledge base is exclusively composed of the rules. I'm not sure there's anything where it says it's exclusively. However, the only thing that's ever put into that knowledge base that's talked about in the specification is rules. Therefore, it would be our position that's all that makes up the knowledge base is the rules. The specification never discloses anything else being put in there other than the rules. The district court, in looking at the terminology, and in fact, at... A12, the district court indicated, here is undisputed that the customer defendants, the users of Synopsys software, do not create the expert rules for selecting hardware. And we agree, they do not create them. This goes back to what Your Honor asked in the beginning. It's the VLSI expert that creates those rules. And the district court went on and says since the ASIC designer is not creating it, therefore, there can be no infringement. It's only the VLSI expert who creates them and places them into a knowledge base. How about the function of rule editing that's referred to in the specification? Who is empowered or enabled by the invention as conceived in the specification to do the rule editing? If I can, before answering your question, just clarify one matter here. What we're saying in the context of this claim is you do not need a VLSI expert to put this information into the system and operate it. Now going to your question, Your Honor, if I may. On the rule editing, this can be done by either of two people. The VLSI expert can come up with the rule modification, come up with the structure, say this is what has to be entered, and then the designer can sit down and do the entry. If you look at the patent, and this is in... The entry will modify the rule in the knowledge base. That's right. Done by the ASIC designer. It can be done by the ASIC designer. Now is it the case, as your opposing counsel suggests, in the brief at least, that that is not a capacity that the accused product has? The accused product does not have, to the best of our knowledge, a capacity to modify or edit the rules. But also there's nothing in Claim 13 that requires there to be a rule editor. There's no portion of Claim 13 that ever laid out that requirement, nor any portion of Claim 13 that was ever construed to require any type of rule editor. I understand. It goes to the question of whether storing in means anything. If the invention, as described, allows the ASIC designer to store in, then that would be an embodiment on which it would seem this claim would read, even under the district court's construction. There's two parts to what's happening here. We'll go through all the claims. It's saying I'm loading the rules into the system. I'm loading all the software into this system, the KBSC software system. I'm loading it in. The rules are now here in the computer system that the ASIC designer is going to be utilizing. It's then saying you can also go in and modify those rules. When you look at what is actually the language in the specification that talks about modification, and this is in column 10, down at the bottom in line 54 and 55, it says this in turn helps the designer to update and append rules. Okay, the question is... The designer being the ASIC designer. Exactly. Yes, Your Honor. And if you go back to column 2 and column 4, it says in column 2, lines 15 to 20, the present invention for the first time opens the possibility for the design and production of ASIC by designers. It uses throughout the specification the word designers to talk about the ASIC designers, and when it's referring to the people with the expertise of the VLSI expertise, it talks about them being the experts. And, in fact, that's, again, repeated in column 4, where it says the designer, and this is at line 15. But just in turn, focusing on the language of the claim. Yes. Storing could mean including in software, or it could mean putting on the hardware, right? On the disk. Yes, it could mean either one, but when you view, and this comes out in Dr. Soderman's declarations, the software, when it's loaded as executable code into the computer, is executable software, which is stored in the hardware in the computer system. Well, sure. But that is software. But the question is what the claim means, whether it's referring to storing and including in the hardware or storing on the disk, right? Well, if you go back to the preamble, where it was agreed that it's got to be a computer system that's using this process, it's got to be in a computer, and this would be in a general purpose computer that has software loaded on it in order to operate in a certain way. So while you may consider it that the software is loaded on the computer, it's got to physically be in the computer. Sure. But in terms of reading the language of the claim here, isn't the more natural reading when it says storing the rules that it's being stored as part of the software rather than being stored on the hard drive? Even if I store it as part of the software, first of all, Your Honor, we disagree. We think it's got to be stored in the computer system, in the hardware, and that's what the whole claim is directed to is the use of a computer system. If it's not stored in the hardware on that system, nothing's going to operate. You have the rules sitting over here, which is the way the district court viewed it, and once I store it on a disk, the storing step is completed, and it never gets loaded onto the computer. It's got to be loaded onto the computer. But if we interpret this claim as talking about storing the rules as meaning including it in the software, you lose, right? I mean, aside from your argument about a genuine issue of material fact having been raised by the supplemental affidavit. No, we disagree, Your Honor. We don't think we do lose because that software that I'm sitting with on the disk has to be loaded into the computer. Well, that's another step then, right? That could be another step. If what this is describing is putting the rules in the software, if that's the step that's being described here, that's not a step that's performed by the user, correct? Well, when I load the software into the computer, I load the software, the rules, segment by segment. As I do— Sure, I understand, but that could be another step. I mean, there could be two steps here. One, putting the rules into the software. Step two, loading the software onto the hardware, into the hard drive or whatever. And Dr. Soderman points out in the declaration, which is not refuted, that both of those, if you view it that way, which is the way the district court was viewing it, if you view it that way, then both synopsis does storing onto the disk of the software. Then when I load the code into the computer, I'm taking again and storing it in the computer. And both are doing it. There may be two steps of storing, but both. The problem is that the language here seems to be referring to the first of those two steps and not the second of the two steps. We disagree, Your Honor. We think it's referring to the second of the two steps. But that if it can encompass the first, it also allows for the second. And the second, when I store the rules into the computer, it forms a knowledge base and it's not a stack that I'm moving over. It's not a container. I'm reformulating the knowledge base by loading those rules in. And loading in the code, it formulates an executable software inside the computer. Very well. Why don't we hear from the appellees. Mr. Phillips. Good morning, Your Honors, and may it please the Court. I think I'd like to start, I suppose, in some respects, where Judge Dyke was in terms of analyzing is this a one-step or inherently potentially a two-step process. And it seems to me the Court really didn't have to go any further than Soderman's own testimony, which he offered up both in his expert report and in his subsequent report, where he says the storage of the tricks, which are the rules, with the RBO module, which is the portion of the software inside my client's product, in the design compiler forms, that's the name of the product, forms the knowledge base, in quotes, the portion of an expert system software having a set of rules and embodying expert knowledge of highly skilled VSLI designers. And that is precisely the interpretation that we have embraced and that we asked the District Court to adopt and the precise interpretation that was adopted. And as a consequence of that, it seems to me the Court doesn't have to go any further in terms of how to interpret this. I suppose you could read this claim. It's an awkward reading, but you could read it. If it had said storing a set of rules in an expert knowledge base, that would be ambiguous as to whether it's referring to the rules as being in the knowledge base or whether it's referring to storing them in the knowledge base, right? And so what you, I think maybe the technical term for this would be an inversion. In other words, putting the prepositional phrase earlier than it normally would be. So it is possible to read this as meaning storing a set of rules which are in a knowledge base. Theoretically, it's an awkward reading. Theoretically, to be sure, but again, the fact that this language was added in later in the process and is by its nature distinguished from the first two steps in Claim 13 where it just talks about storage and all of the discussion in there about the expertise that's necessary in order to create those rules and to put them into place and then to then convert that as their own expert did very eloquently and show exactly that it's placed in the software. And his only argument on the backside of that is you can't store in software, which is flatly inconsistent with his own articulation of precisely what goes on with respect to synopsis under these particular circumstances. Yeah, I understand that. I guess the fact that there is some ambiguity here leads to the problem that I think you have, and that is that this looks as though this is a process claim which describes what the user does rather than a combination of what the user does and what the expert does. Yeah, I think that's why, Judge Dyke, the timing of this is relatively important because this gets added in in order to distinguish it over the prior art and does so on the basis of the specialized expertise that is being brought into as part of the creation and storage of the knowledge base. And that's why this appears to be an add-on to what is otherwise unquestionably an overall invention that is aimed, obviously, at making it relatively easy for the design of these particular chips. And I don't disagree. The vast majority of these claims go to that point. But that doesn't at all, it seems to me, obviate the very different part that is embodied in Step 3 where it says, you know, we're going to have to use these BSLIC experts to bring in the information, to create the rules, to be in a position to edit them. And that's the one portion of this that you're just going to have to take as the ultimate chip designer who doesn't have that expertise. You're just going to have to accept that part of it. But that requires all part of a single package. The one thing you cannot do is then, you know, and a lot of this is contrived. I mean, under ordinary circumstances, you would bring this as a joint infringement claim. And you say, okay, well, you're doing the one step and they're doing the other steps and you're together and you should bring an action against them. But they're obviously not in a position to make that argument because they've already given us a covenant not to sue with respect to our involvement with this particular patent. And that's the reason you have this issue. So it seems to me the court ought not to go to any kind of great lengths to kind of try to figure out a way to convolute the interpretation of Step 3. It ought to interpret Step 3 in its most natural way and recognize that the problem here hasn't got anything to do with how you construe the claims. It has to do with the fact that the other side has agreed not to sue synopsis. And so, you know, the fact that we don't do anything with respect – that we do everything with respect to that one step simply is not a basis on which you can bring an infringement action. Do you think – and perhaps you've answered this question, but just to be clear – do you think that Claim 13 is, in fact, reading and reading only on the system in which synopsis sets the rules up and those rules are fixed and then the product is sent downstream to the customer assuming you could have joint infringement in the setting? Or do you think Claim 13 reads, at least in part or even perhaps in whole, on a system in which there is rule editing which is done, as the specification seems to suggest, at least in part by an ASIC designer? Well, I think it's important to understand, Judge Reisner, because I disagree with my colleague slightly. If you look at Joint Appendix 34, it's reasonably clear that VSLI folks would be ASIC designers, but not every ASIC designer is a VLSI. I guess the terms are not used in a mutually exclusive – No, they are not mutually exclusive. So it's not nearly as easy as that. But I think the answer to your question, or at least if I understand the question or what you're trying to get at, is obviously the person who's trying to design the chips could in fact have a VLSI person on staff who assists as part of that process. So you'd have one VLSI guy and 150 chip design guys, the ASICs guys, and so you'd pay the $100,000 to the very sophisticated one and you'd pay $15,000 to all of the others, and they would interact in a way that would create a single system that might in fact fall within what RICO is claiming here. So you're understanding that that is what is contemplated at least in part by the rule editing or do you not read that as part of the rule editing? I don't see that. I mean the rule editing isn't part of Claim 13 specifically, but I do think what it does show is the importance of that very specialized expertise being brought in as part of what was ultimately added in under these circumstances. And I do think it's important in that respect, and particularly in terms of the summary judgment, to go back to the Adams Declaration, which says categorically that the customer defendants do not create, store, edit, or add any of the design compiler source code or executable code. So the suggestion, and it's just a throwaway at one sentence, and they're experts supplemental, which could have easily been filed the first time around, but isn't filed until after summary judgment, that says that this is copied over in some specific way is clearly not true. That's not the way this process works, and there is no question of fact with respect to that. So it seems to me all the court needs to do is simply take the plaintiff's own expert, his interpretation of this claim language, do it expressly on the basis of that. We clearly don't infringe under that understanding of it, and the district judge did it exactly right. He analyzed it and said, look, under that interpretation, which they obviously complain about, but under that interpretation, which is undoubtedly the most natural reading of that language, there is no infringement under these circumstances, case appropriate for summary judgment. If there are no further questions, Your Honors, I would ask you to affirm. Mr. Hoffman, we ran through all of your time, but you were questioned heavily. Why don't we give you two minutes to rebut if you need it? Thank you, Your Honor. Just a few brief points. First of all, in connection with my colleague's comment about what was said by Dr. Soderman in his reports, I'll read from the appendix 2767, where in the expert report showing why there's infringement, laying out his theory as to why there's infringement, this element was met when Aeroflex, which is one of the ASIC design companies, installed or loaded executable software for design power in computer memory. And then it goes on. Dr. Soderman always spoke about the software being loaded onto the designer's computer, the ASIC designer's computer. So everything that is referred to about tricks, about software, about certain code, about certain rules that may have been created, authored, Dr. Soderman's point has always been it's loaded on the computer. The ASIC designer needs to store the code on the computer. If the code is not stored on the computer, then it doesn't meet what's in the preamble. And this is what this claim is all about, is a code stored on a computer for designing ASIC chips. Third, the comment was made that's not the way the process works, the way Dr. Soderman says in the declaration that he submitted. The comment was made that's not the way in which it works. Well, that's a disputed fact. That is what Dr. Soderman says. That is evidence before the district court, evidence that was just ignored, was totally rejected. There's nothing to refute that evidence. It's just evidence that was ignored by the district court. And that's inappropriate. Before you sit down, I have one other question. Yes, Your Honor. And this claim, this patent was filed in 1988. It was granted in 1990. At that point, nobody was worrying about the joint infringement problem, right? That is correct. Nor, if I may add, this case started in 2003, and it was only until 2010 that this issue came up. Thank you, Your Honor. Thank you. The case is submitted. We thank both parties.